```
           UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF MISSISSIPPI
                 NORTHERN DIVISION
```

UNITED STATES OF AMERICA

VS.                              CRIMINAL NO. 3:21CR102 TSL-FKB

WALTRAVIOUS LEEANDRE WATSON

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Waltravious Leeandre Watson to suppress. Following briefing by the parties, the court conducted an evidentiary hearing on the motion. Based on the evidence adduced at the hearing, as described below, and under applicable law, the court finds there was reasonable suspicion for the challenged search of defendant's home and, since he was a probationer at the time of the search, the court concludes the search was lawful and the motion to suppress will therefore be denied.

Background

On January 23, 2017, following his guilty plea in the Circuit Court of Lauderdale County to burglary of a building in violation of Miss. Code Ann. §97-17-33, a felony, Watson was sentenced to five years in the custody of the Mississippi Department of Corrections (MDOC), with four years and nine months suspended, and five years reporting probation under the supervision of the MDOC.

1

The terms and conditions of his probation, to which Watson agreed, included that he would "permit the Probation Officer to visit him at his home or where he may otherwise be found without restrictions, reluctance, or delay" and "submit his person, place of residence, automobile, recreational vehicle, clothing, personal property, and person effects and any/all other areas and property under [his] control, care or custody to a search at any time, with or without probable cause by an MDOC officer or any other law enforcement officer."

On February 19, 2020, MDOC Probation and Parole Officer Melissa Shackelford, after receiving a tip that Watson had drugs and possibly guns at his home, went to Watson's residence, accompanied by officers with the East Mississippi Drug Task Force (Task Force). When she arrived and approached the house, Watson met her outside on the sidewalk; he asked her what was going on, and she told him she was there for a home visit. He invited her in. Officer Shackelford entered the residence, followed by Task Force officers, through the front door, which led directly into a bedroom. Officer Shackelford asked whether anyone else was in the home, and he told her that a guy named Anthony was on the couch in the living room. They walked through the bedroom area and into the living room area of the home. After Task Officers escorted

2

Anthony out of the house, Officer Shackelford and the officers began looking around, seeing what was observable in plain sight, without touching or moving anything.  In the living room, Officer Shackelford observed in the open top drawer of a dresser what appeared to be controlled substances -- a green leafy substance that appeared to be marijuana and a white powdery substance -- as well as drug paraphernalia and money.  She asked Watson whether there were any guns in the room, and he told her there was one in a backpack that was on the floor by a recliner.  She asked if there were any more guns in the house, and he pointed out where other guns were located, including inside the left cabinet of the desk; inside a locked bedroom; inside a box beside the couch that was covered by a shirt; and under the mattress.  After the search of the home, defendant was taken to the Lauderdale County Sheriff's Office where, during interrogation by Task Force officers, he admitted to possessing the firearms and drugs found in the house.

    Following a hearing on March 6, 2020, defendant's probation was revoked and he was sentenced to four years and nine months in MDOC custody.  Subsequently, on September 8, 2021, a federal grand jury charged him with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

Watson has moved to suppress all the physical evidence and statements obtained from or as a result of the search of his residence. As the basis for his motion, he contends that Officer Shackelford's presence at the residence was not for a legitimate home visit but rather for the purpose of conducting a search, but, according to Watson, she lacked reasonable suspicion for the search. Therefore, the search violated his Fourth Amendment rights, and consequently, any guns or other evidence seized should be excluded, and the government should not be allowed to use them in evidence against him. He further contends that his statements should also be suppressed, as fruit of the poisonous tree. See United States v. Scroggins, 599 F.3d 433, 446 (5th Cir. 2020) ("Evidence obtained as a direct result of an unconstitutional search or seizure is plainly subject to exclusion" as is "evidence later discovered and found to be derivative of any illegality or 'fruit of the poisonous tree'").

In response to the motion, the government maintains that the purpose of Officer Shackelford's trip to the residence was to conduct a home visit in response to the tip she received and therefore, her entry of the residence to conduct the home visit was permitted without suspicion of any kind. The government asserts that the search of the residence did not begin until

4

Officer Shackelford saw what she believed to be controlled substances in plain view; and her observation of the drugs, it contends, was more than sufficient to create reasonable suspicion, and sufficient, even, to provide probable cause for the search that followed.  The government further claims that even if the court finds this was not merely a home visit but rather amounted to a search from the outset, it was nevertheless proper and lawful as the tip Officer Shackelford received which prompted her trip to the residence gave her reasonable suspicion for a search.

Discussion

The Fourth Amendment protects the right of private citizens to be free from unreasonable government intrusions into areas where they have a legitimate expectation of privacy.  Thus, law enforcement ordinarily must obtain a warrant supported by probable cause before searching a private residence.  United States v. LeBlanc, 490 F.3d 361, 364 (5th Cir. 2007).  A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches and intrusions upon privacy be "reasonable."  Id. (citing Griffin v. Wisconsin, 483 U.S. 868, 873, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987)).  However, the Supreme Court has held that "[a] State's operation of a probation system, like its operation of a school, government office or

prison, or its supervision of a regulated industry, likewise presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." Griffin, 483 U.S. at 873-74, 107 S. Ct. 3164. Probationers "do not enjoy 'the absolute liberty to which every citizen is entitled, but only ... conditional liberty properly dependent on observance of special [probation] restrictions.'" Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 480, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)). "[A] warrantless search of a probationer's residence does not violate the Fourth Amendment when the search is authorized by a condition of probation and supported by reasonable suspicion of criminal activity. United States v. Knights, 534 U.S. 112, 121, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001) ("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that [a warrantless] intrusion on the probationer's significantly diminished privacy interests is reasonable."). Here, it is undisputed that Watson's probation was subject to a search condition; he agreed to "submit his person, place of residence ... to a search at any time, with or without probable cause by an MDOC officer or any other law enforcement officer."

Another condition of Watson's probation was that he would submit to a home visit at any time by his probation officer "without restrictions, reluctance, or delay."

Unlike searches, home visits are permissible without *any* suspicion.  See United States v. LeBlanc, 490 F.3d 361, 369 (5th Cir. 2007) (distinguishing between searches that require reasonable suspicion and home visits, holding that a probation officer's brief walk through the rooms in the home, and plain-view seizure of a shotgun, did not violate the Fourth Amendment, even though the officer lacked reasonable suspicion that defendant was engaged in criminal activity, explaining that "[w]ere we to impose a requirement that a probation officer show reasonable suspicion of criminal activity before visiting a probationer at his home, supervision would become effectively impossible").  Hence, while Officer Shackelford was not permitted to search Watson's home without reasonable suspicion, she was permitted to enter the home for a home visit without having reasonable suspicion of criminal activity.

Reasonable Suspicion

"Reasonable suspicion of criminal activity must be based upon 'specific facts which, taken together with rational inferences therefrom, reasonably warrant an intrusion.'"  United States v.

7

Rivas, 157 F.3d 364, 367 (5th Cir. 1998) (quoting United States v. Cardenas, 9 F.3d 1139, 1153 (5th Cir. 1993)). "Reasonable suspicion is defined as 'a particularized and objective basis for suspecting the particular person'" of criminal activity. Id. (quoting United States v. Montoya de Hernandez, 473 U.S. 531, 541, 105 S. Ct. 3304, 87 L. Ed. 2d 381 (1985) (internal quotation and citation omitted)). "In determining whether government agents possessed a reasonable suspicion that criminal activity was occurring, [the court] must consider 'the totality of the particular circumstances.'" Id. (quoting Cardenas, 9 F.3d at 1148 (internal quotations and citation omitted)). The government has the burden of proving reasonable suspicion. United States v. Martinez, 486 F.3d 855, 859-60 (5th Cir. 2007).

An informant's tip may provide reasonable suspicion, depending on "'the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale.'" Id. at 861 (quoting United States v. Gonzalez, 190 F.3d 668, 672 (5th Cir. 1999)).

8

In her incident report in this case, Officer Shackelford described the tip she received as an "anonymous tip," which she acknowledged at the hearing was a poor word choice. She stated that, in fact, she knew the person who provided the information, and that she had described the tip as "anonymous" because the person expressed fear for his/her life if his/her identify were known. It would have been more appropriate, she acknowledged, to describe the person as a confidential informant. Regarding this informant, Officer Shackelford testified credibly that although this individual had not previously provided her with information about criminal activity, she had known the person for at least several months, having met him/her during her previous employment at a police department. She had had a number of conversations with this person, and based on her knowledge of the person and interactions with him/her, she believed the information provided regarding Watson was reputable.

The information provided, as described by Shackelford, was specific and related to an offense that was not stale but was ongoing. The informant stated that he/she knew Watson and had hung out with him before; that he/she had previously seen drugs and guns at Watson's house; and that Watson had traveled to Alabama the night before to pick up a shipment of drugs and bring

9

them back to his house and break them down to sell.  Officer Shackelford stated that the individual described Watson's vehicle -- a purple or gray Honda truck -- and she believes the person told her the name of the street where Watson lived but not a house number.  Considered as a whole, the court is persuaded that the information provided to Officer Shackelford by the confidential informant was sufficiently reliable to create reasonable suspicion that Watson was engaging in criminal activity.  Assuming, therefore, that Officer Shackelford's visit to Watson's home amounted to a search from the outset, the court concludes that it was not conducted in violation of Watson's Fourth Amendment rights and his motion to suppress should be denied.

Alternatively, even if the tip was not sufficient to create reasonable suspicion, the court is nevertheless of the opinion that the search which led to the challenged evidence was lawful and that his motion should be denied for that further reason.

<u>Home Visit</u>

Watson argues that Officer Shackelford's purported home visit was not a legitimate home visit but rather was subterfuge for a search, which was unsupported by reasonable suspicion.  Implicit in Watson's argument that Officer Shackelford was prohibited from conducting a home visit is the notion that a home visit is

10

permissible only if the probation officer has no cause to suspect the probationer is engaging in criminal activity. Based on defendant's reasoning, an officer who has information that the probationer is involved in criminal activity is precluded from conducting a home visit unless the information is sufficient to create the reasonable suspicion needed to justify a full-blown search. Despite having information that suggests the probationer is violating the law, her hands are tied: she cannot conduct a search, unless, that is, she is able to verify the reliability of her information, yet she cannot conduct a home visit as a means of attempting to verify or refute the information. The court finds that defendant's position is, as the government contends, contrary to the needs of the state in supervising probationers and to the specific authority granted to Officer Shackelford by the terms of defendant's probation.

    A similar scenario was presented in United States v. Wasser, 586 Fed. Appx. 501 (11th Cir. 2014). The FBI received an anonymous tip that the defendant was in possession of firearms and narcotics. The FBI passed this information on to the defendant's probation officer, who, based on the tip, planned "a probation compliance visit and warrantless search of Wasser's residence." Id. at 502. The probation officer, accompanied by law enforcement

11

officers she had asked to provide security during the visit, informed the defendant upon her arrival at the home that she was there for a probation visit and asked to enter the home. Id. He consented, and upon entering the residence, the probation officer and law enforcement officers observed in plain view items (combat knives, swords and a firearm) that the defendant was prohibited from possessing by the terms of his probation. Id. The probation officer began to search the residence, and found additional knives and drugs. Id.

In denying the defendant's motion to suppress, the court concluded that "[p]robation officers were permitted to enter Wasser's home for a compliance visit without having reasonable suspicion of probation violations. A standard condition of Wasser's supervision directed him to allow is probation officer to visit in his home.... Accordingly, [the probation officer] was authorized pursuant to the terms of Wasser's terms of probation, to enter Wasser's home [at the time in question], without having reasonable suspicion." Id. at 505. The court continued, stating that "[a]lthough probation officers did not have reasonable suspicion to search Wasser's home based on the anonymous tip alone, ... they acquired reasonable suspicion of criminal activity as soon as they lawfully entered Wasser's residence" and saw in

12

plain view numerous items, the possession of which violated the conditions of Wasser's probation. Id. The same is true here. That is, even if Officer Shackelford did not have reasonable suspicion based on the tip from the confidential informant, she nevertheless was authorized to conduct a home visit under the express condition of Watson's probation that he consent to home visits, without restriction. The visit was not overly intrusive; nothing was touched or moved. Rather, Officer Shackelford did no more than walk from the bedroom area to the living room area, observing what was in plain view. As in Wasser, even if she did not have reasonable suspicion at the start of the visit, she did once she observed the drugs, at which point she was allowed to conduct a thorough search of the residence. See Knights, 534 U.S. at 121. Her search was permissible on this basis, and was not a violation of Watson's Fourth Amendment rights, and therefore, his motion to suppress the evidence seized, as well as the statements he seeks to suppress as fruits of the poisonous tree, is denied for this additional reason.

Conclusion

Based on the foregoing, Watson's motion to suppress will be denied, and it is SO ORDERED, this 16th day of February, 2023.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE